R. Joseph Trojan, CA Bar No. 137,067
trojan@trojanlawoffices.com
Dylan C. Dang, CA Bar No. 223,455
dang@trojanlawoffices.com
Fredrick S. Tsang, CA Bar No. 284,938
tsang@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   310-777-8399
Facsimile:   310-691-1086

Attorneys for Plaintiffs,
HOMELAND HOUSEWARES, LLC AND
NUTRIBULLET, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC, a California LLC, and NUTRIBULLET, LLC, a California LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>Euro-Pro Operating LLC, a Massachusetts LLC<br><br>    Defendant. | CASE NO.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR FEDERAL FALSE ADVERTISING, TRADE DRESS INFRINGEMENT, STATE FALSE ADERTISING, TRADE LIBEL, and UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

TROJAN LAW OFFICES
BEVERLY HILLS

HOMELAND HOUSEWARES, LLC, et al. V. Euro-Pro Operating, LLC
COMPLAINT

Plaintiffs Homeland Housewares, LLC and Nutribullet, LLC (hereinafter collectively, "Homeland" or "Plaintiff") hereby complain and allege as follows:

## I. GENERAL ALLEGATIONS:

1. Homeland Housewares, LLC is an LLC organized and existing under the laws of the State of California, having its principal place of business at 11755 Wilshire Blvd, Suite 1200, Los Angeles, California 90025. Homeland Housewares, LLC owns the NUTRIBULLET trademark and trade dress alleged herein and exclusively licenses such rights to Nutribullet, LLC, which is also a California LLC. Both companies are wholly owned by Capital Brands, LLC.

2. Upon information and belief, Defendant Euro-Pro Operating LLC (hereinafter "Defendant" or "Euro-Pro") is a company organized under the laws of the State of Massachusetts, having its principal place of business at 1210 Washington St., West Newton, MA 02465.

3. This Court has personal jurisdiction over Euro-Pro because Euro-Pro conducts business in Los Angeles, California and venue is proper within this jurisdiction because sales of accused products have occurred in Los Angeles, including at Bed, Bath, and Beyond at 11854 West Los Angeles, CA 90064 and because the Plaintiff is located within the Central District of California at 11755 Wilshire Blvd, Suite 1200, Los Angeles, CA 90025.

4. Homeland has spent several hundred million dollars advertising its BULLET blenders. Infomercials for the MAGIC BULLET and related MAGIC BULLET blenders are being shown somewhere in the world at every minute of every day. The family of BULLET blenders includes *inter alia,* the MAGIC BULLET, the BABY BULLET, the PARTY BULLET, the BULLET EXPRESS, the MAGIC BULLET PLATINUM PRO, the NUTRIBULLET, NUTRIBULLET SPORT, and the NUTRIBULLET PRO. The superior quality of the BULLET

-1-

TROJAN LAW OFFICES
BEVERLY HILLS

product line in combination with extensive marketing efforts has caused the BULLET blenders to become famous in the minds of relevant consumers.

5. Defendant Euro-Pro has a history of making cheap knock-offs of successful consumer products, resulting in Euro-Pro being sued numerous times, most frequently for intellectual property violations.  The Better Business Bureau reports that Euro-Pro has the highest number of complaints in its product category, and Euro-Pro has failed to receive a rating from the Better Business Bureau.  In contrast, Homeland has an A+ rating and Nutribullet has an A- rating with the Better Business Bureau.  While there are other companies who legitimately compete with the BULLET line of blenders, each such competing product has packaging that defines its own distinctive trade dress and color scheme as shown in Exhibit 1.  Euro-Pro prefers to copy the industry leader as more fully set out herein.

6. Within the last two months, Euro-Pro began importing a blender called the NUTRI NINJA PRO.  Recognizing that the BULLET line is the market leader in this blender category, Euro-Pro chose to duplicate the color scheme, fonts, phraseology, and overall look and feel of the Plaintiff's NUTRIBULLET packaging trade dress in order to draw consumers to the NUTRI NINJA PRO as a result of the consumer's sense of familiarity with the NUTRIBULLET packaging trade dress.  See Exhibit 2 for photos of both the NUTRIBULLET and NUTRI NINJA PRO.  Once drawn to the NUTRI NINJA PRO, Defendant Euro-Pro directly compares the NUTRI NINJA PRO to the NUTRIBULLET.  See Exhibit 3.  This comparative advertising would be permitted if it were not for the fact that it is blatantly false.  Homeland sells three products under its current NUTRIBULLET line: the NUTRIBULLET, the NUTRIBULLET PRO, and the NUTRIBULLET SPORT.

7. The false statements on the NUTRI NINJA PRO packaging shown in Exhibit 3 include all of the following false claims:

-2-

HOMELAND HOUSEWARES, LLC V. EURO-PRO OPERATING LLC
CASE NO.

(a) **False Statement:** The NUTRIBULLET does not have a 900 watt motor.

**The Truth:** Two out of three of Homeland's NUTRIBULLET products have 900 watt motors, which is plainly stated on the front of the box. See Exhibit 4.

(b) **False Statements:** The NUTRI NINJA PRO performs at 21,000 RPM and the NUTRIBULLET does not exceed 21,000 RPM.

**The Truth:** Both statements are false. In tests under loaded conditions, the NUTRI NINJA PRO did not exceed 19,900 RPM, and the NUTRIBULLET PRO and NUTRIBULLET SPORT both produce over 22,000 RPM and are more than 2,200 RPM faster than the NUTRI NINJA PRO. Even if unloaded conditions are compared, the NUTRIBULLET PRO and NUTRIBULLET SPORT are faster at 25,000 RPM.

(c) **False Statement:** The NUTRIBULLET does not crush ice.

**The Truth:** All NUTRIBULLETs crush ice. Euro-Pro must operate the NUTRIBULLET under fake conditions to avoid crushing ice.

(d) **False Statement:** The NUTRIBULLET does not have sip and seal lids.

**The Truth:** Two out of three NUTRIBULLET lines have sip and seal lids as displayed on the front of the box. See Exhibit 4.

(e) **False Statement:** The NUTRI NINJA PRO has a stainless steel casing.

**The Truth:** NUTRI NINJA PRO has a casing made of a type of plastic that imitates the appearance of stainless steel. Imitation plastic is not stainless steel.

Based upon these factual misrepresentations, Euro-Pro is able to convince consumers that its inferior product is equal to or superior to the quality of the market leader.

## II. FIRST CAUSE OF ACTION:

-3-

HOMELAND HOUSEWARES, LLC V. EURO-PRO OPERATING LLC
CASE NO.

# FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)

8. Plaintiff Homeland realleges paragraphs 1 through 7 herein, supra, and 16 through 19, infra, as though fully set forth herein.

9. Homeland's family of BULLET products has become the market leader in the kitchen blender market. The growth of BULLET line of products has been driven by the reputation for excellence that the BULLET line has acquired. Homeland is constantly updating and improving its technology to make each new generation of BULLET products better than the last. The NUTRIBULLET represents the best that Homeland has ever offered. To compete against the superior technology of the NUTRIBULLET, Euro-Pro has not been able to develop a product that can compete on merit with the superior quality of the NUTRIBULLET. In fact, the NUTRI NINJA PRO is a cheap knock off of the NUTRIBULLET. Rather than make the investment necessary to compete on basis of quality, Euro-Pro has chosen to take an unlawful shortcut by literally lying about the features of the NUTRIBULLET and falsely claiming that the NUTRI NINJA PRO is a superior product.

10. The false statements on the NUTRI NINJA PRO packaging shown in Exhibit 4 include all of the following false claims:

(a) **False Statement:** The NUTRIBULLET does not have a 900 watt motor.
**The Truth:** Two out of three of Homeland's NUTRIBULLET products have 900 watt motors, which is plainly stated on the front of the box. See Exhibit 4.

(b) **False Statements:** The NUTRI NINJA PRO performs at 21,000 RPM and the NUTRIBULLET does not exceed 21,000 RPM.
**The Truth:** Both statements are false. In tests under loaded conditions, the NUTRI NINJA PRO did not exceed 19,900 RPM, and the NUTRIBULLET

-4-

PRO and NUTRIBULLET SPORT both produce over 22,000 RPM and are more than 2,200 RPM faster than the NUTRI NINJA PRO. Even if unloaded conditions are compared, the NUTRIBULLET PRO and NUTRIBULLET SPORT are faster at 25,000 RPM.

(c) **False Statement:** The NUTRIBULLET does not crush ice.

**The Truth:** All NUTRIBULLETs crush ice. Euro-Pro must operate the NUTRIBULLET under fake conditions to avoid crushing ice.

(d) **False Statement:** The NUTRIBULLET does not have sip and seal lids.

**The Truth:** Two out of three NUTRIBULLET lines have sip and seal lids as displayed on the front of the box. See Exhibit 4.

(e) **False Statement:** The NUTRI NINJA PRO has a stainless steel casing.

**The Truth:** NUTRI NINJA PRO has a casing made of a type of plastic that imitates the appearance of stainless steel. Imitation plastic is not stainless steel.

Based upon these factual misrepresentations, Euro-Pro is able to convince consumers that its inferior product is equal to or superior to the quality of the market leader.

11. Based upon these factual misrepresentations, Euro-Pro is able to convince consumers that the NUTRI NINJA PRO is superior to the market leader. In addition to these blatant factual lies, Euro-Pro also deceives consumers by claiming that its blenders are made of stainless steel. In fact, they are made of a type of plastic that imitates the appearance of stainless steel. Imitation stainless-like plastic is not stainless steel. Euro-Pro's representation to consumers that its plastic is stainless steel is just another example of its unscrupulous false advertising to deceive consumers into believing that its inferior product is equal to or superior to the quality of the blenders produced by Homeland, the market leader.

-5-

HOMELAND HOUSEWARES, LLC V. EURO-PRO OPERATING LLC
CASE NO.

12. Euro-Pro's conduct constitutes false advertising under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) because any person who in connection with any goods, or any container for goods, uses in commerce any misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities of another person's goods is liable for all damages resulting therefrom. Euro-Pro's enumerated misrepresentations of fact clearly and unambiguously fall with the legal definition of false advertising contained within Section 43(a) of the Lanham Act.

13. Euro-Pro's acts of false advertising have irreparably injured Homeland and such irreparable injury will continue unless Euro-Pro is preliminarily and permanently enjoined by this Court from continuing to engage in such ongoing acts of unfair competition, for which Homeland has no adequate remedy at law, and ordered to issue corrective advertising to re-educate consumers who have been unfairly misled. To cure the harm caused by the deceptive advertising, Euro-Pro must send notices directly to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the deception and giving such consumers the right to a full refund. To prevent future harm, Euro-Pro must be ordered to immediately advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false statements. Euro-Pro is on notice that it must preserve all records relating to consumers who purchased the NUTRI NINJA PRO, and advise all retailers to which the infringing products were sold to maintain such consumer records to the extent that they exist.

14. For each of Euro-Pro's acts of false advertising, Homeland is entitled to recover its actual damages as well as Euro-Pro's profits from such conduct, and

-6-

1 such conduct was willing, intentional and knowing thereby rendering this case
2 exceptional within the meaning of 15 U.S.C. § 1117(a) for which Homeland is
3 entitled to treble damages and its reasonable costs, including attorneys' fees, and
4 injunctive relief.

### III.  SECOND CAUSE OF ACTION:
### TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125(a)

15. Plaintiff Homeland realleges paragraphs 1 through 14 herein above as though fully set forth herein.

16. Homeland is the owner of the family of BULLET trademarks for kitchen appliances, including the NUTRIBULLET. Homeland's use of the BULLET trademarks has come to be known as a symbol of consistency and quality for all goods offered under the BULLET family of trademarks. Homeland has developed distinctive packaging for each of its products that defines inherently distinctive packaging trade dress, including for the NUTRIBULLET, and Homeland has developed and maintained substantial secondary meaning in such intellectual property through its spending of several hundred million dollars on advertising and promotion of the BULLET line of kitchen appliances and associated trade dress. Every other competitor has developed its own distinctive trade dress for their packaging for their competing blenders and kitchen appliances. Only Euro-Pro, with its extensive history of violating the intellectual property rights of others, has chosen to adopt trade dress that is confusingly similar to Homeland's trade dress.

17. Euro-Pro has infringed and is infringing on the distinctive NUTRIBULLET trade dress by using packaging trade dress for the NUTRI NINJA PRO that is confusingly similar to the NUTRIBULLET trade dress in color scheme, fonts, layout, phraseology, and overall look and feel to trade off the appearance of

-7-

the market leader to attract consumers to Euro-Pro's competing blender. Such bait and switch tactics has caused, and will continue to cause, consumer confusion as to Homeland's association with, affiliation with, or sponsorship of Euro-Pro's products.

18. Euro-Pro's conduct constitutes trade dress infringement pursuant to Section 43(a) of The Lanham Act (15 U.S.C. § 1125(a)) because it causes confusion, has caused confusion, and will continue to cause confusion. Moreover, Euro-Pro's acts of trade dress infringement have irreparably injured Homeland and such irreparable injury will continue unless Euro-Pro is preliminarily and permanently enjoined by this Court from continuing to engage in such ongoing acts of unfair competition, for which Homeland has no adequate remedy at law, and ordered to issue corrective advertising to re-educate consumers who have been unfairly mislead. To cure the harm caused by the deceptive trade dress, Euro-Pro must send notices directly to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the deception and giving such consumers the right to a full refund. To prevent future harm, Euro-Pro must be ordered to immediately advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false statements and misleading trade dress. Euro-Pro is on notice that it must preserve all records relating to consumers who purchased the NUTRI NINJA PRO, and advise all retailers to which the infringing products were sold to maintain such consumer records to the extent that they exist.

19. For each of Euro-Pro's acts of trade dress infringement, Homeland is entitled to recover its actual damages as well as Euro-Pro's profits from such conduct, and such conduct was willing, intentional and knowing thereby rendering this case exceptional within the meaning of 15 U.S.C. § 1116(d). Accordingly, this

is an exceptional case within the meaning of 15 U.S.C. § 1117(a) thereby entitling Homeland to treble damages and its reasonable costs, including attorneys' fees, and injunctive relief.

## IV. THIRD CAUSE OF ACTION:
## TRADE LIBEL

20. Defendants incorporate by reference all allegations contained in paragraphs 1 through 19 as though fully set forth herein.

21. EURO-PRO has made false statements about the quality and performance of Homeland's NUTRIBULET to achieve economic advantage. These false statements, as detailed in Paragraph 7, supra, are not a matter of opinion or mere puffery, but rather are objectively false statements of fact. EURO-PRO knew these statements were false, or made these false statements of fact with reckless disregard for the truth because inspection of NUTRIBULLET products that have been on sale at least since 2013 would have revealed the falsity of the factual misrepresentations. Euro-Pro has published the false statements by distributing the false statements to consumers on a national basis, including within this judicial district. Euro-Pro's false statements about the NUTRIBULLET have damaged, and will continue to damage, Homeland's hard earned reputation as a provide of superior, quality products because the false statements cast Homeland in a false light as a provider of inferior products that do not perform as promised.

22. Euro-Pro's disparagement of Homeland's products has caused damages and irreparable injury to Homeland, including, but not limited to lost sales, disruption of business relationships, loss of market share and of customer goodwill. Euro-Pro failed to conduct any meaningful due diligence before making its objectively false statements about the NUTRIBULLET and willfully and deliberately intended to cause harm to Homeland without justification. Such

-9-

unlawful conduct was intended to and did actually cause harm, and continues to cause harm to Homeland with oppressive and malicious intent as those terms are defined in California Civil Code § 3294, thereby entitling Homeland to an award of punitive damages under the California Civil Code.

23. To cure the harm caused by the libelous statements made by Euro-Pro, the defendant must send notices directly to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the trade libel and giving such consumers the right to a full refund. To prevent future harm, Euro-Pro must be ordered to immediately advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false statements and misleading trade dress in order to cure the damage caused to Homeland's reputation caused by the trade libel.

## V. FOURTH CAUSE OF ACTION:
## UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200

24. Plaintiff Homeland realleges paragraphs 1 through 23 herein above as though fully set forth herein.

25. By engaging in the above-described practices and actions, Defendant has committed one or more acts of unfair competition within the meaning of California *Business and Professions Code* ("BPC") §§ 17200 *et seq*. As used in this Complaint, and in BPC § 17200, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with BPC § 17500). This conduct as alleged is actionable pursuant to BPC §§ 17200 and 17203.

26. EURO-PRO has engaged in, and continues to engage in, such unfair

-10-

competition with full knowledge that such acts and practices are wrongful, arbitrary, without reasonable business or commercial justification, unethical, oppressive, and have caused substantial harm and injury to Homeland. Moreover, EURO-PRO's conduct, as described above, is unlawful, unfair, and deceptive, and violates BPC §§ 17200 *et seq*. and constitutes, *inter alia*, false advertising, trade libel, and trade dress infringement, resulting in injury in fact to Homeland in form of lost revenue, lost profits, lost market share, lost business value and good will, and lost business opportunities as a result of EURO-PRO's unlawful actions and practices in violation of BPC sections 17200 *et seq*. As a direct and proximate result of EURO-PRO's unlawful conduct, Homeland is entitled to restitution and disgorgement of profits in an amount according to proof at trial and entitled to preliminary and permanent injunctive relief restraining EURO-PRO, its officers, directors, members, agents and employees, and all persons acting in concert with it, from engaging in any further acts in violation of Section 17200 of the California Business and Professions Code.

27. To cure the harm caused by the false advertising and deceptive trade dress, Euro-Pro must send notices directly to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the deception and giving such consumers the right to a full refund. To prevent future harm, Euro-Pro must be ordered to immediately advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false statements and misleading trade dress.

## VI. FIFTH CAUSE OF ACTION:
## FALSE ADVERTISEMENT
## UNDER CAL. BUS. & PROF. CODE §§ 17500 AND 17508

-11-

HOMELAND HOUSEWARES, LLC V. EURO-PRO OPERATING LLC
CASE NO.

28. Homeland hereby incorporates by reference the allegations contained in paragraphs 1 through 27, inclusive.

29. Euro-Pro's misstatements of fact in which it has made false comparisons between the NUTIRBULLET and the NUTRI NINJA PRO, as alleged generally throughout this Complaint and specifically in Paragraph 10, constitutes untrue and/or misleading advertising in violation of Cal. Bus. Prof. Code § 17500, which Euro-Pro knew to be untrue or misleading, or by the exercise of reasonable care should have known to be untrue or misleading.

30. In addition to violating Cal. Bus. Prof. Code § 17,500 by making false and/or misleading statements in its advertising, Euro-Pro has also violated Cal. Bus. Prof. Code § 17,508, governing comparative advertising. Euro-Pro has violated § 17,508 because Euro-Pro has made comparisons between the NUTIRBULLET and the NUTRI NINJA PRO that purport to be based on factual, objective evidence and compares the NUTRI NINJA PRO's effectiveness to that of other brands, namely, the NUTRIBULLET, when in fact the comparisons made by Euro-Pro are objectively false.

31. Euro-Pro's acts of false advertising have irreparably injured Homeland and such irreparable injury will continue unless Euro-Pro is preliminarily and permanently enjoined by this Court from continuing to engage in such ongoing acts for which Homeland has no adequate remedy at law in violation of Cal. Bus. Prof. Code §§ 17,500 and §17,508, and Euro-Pro must be ordered to issue corrective advertising to re-educate consumers who have been unfairly misled. To cure the harm caused by the untrue and/or misleading advertising, Euro-Pro must send notices directly to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the false advertising and giving such consumers the right to a full refund. To prevent future harm, Euro-Pro must be ordered to immediately

advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false advertising.

32. For each of Euro-Pro's acts of false advertising, Homeland is entitled to recover its actual damages as well as Euro-Pro's profits from such conduct, and its reasonable costs, including attorneys' fees, corrective advertising, and injunctive relief.

### VII. DEMAND FOR JURY TRIAL:

Plaintiff hereby exercises its right to a jury trial under the Seventh Amendment to the United States Constitution and hereby demands a jury trial in accordance therewith.

### VIII. PRAYER OF RELIEF:

WHEREFORE, Plaintiff Homeland prays as follows:

1. That Plaintiff be awarded judgment in its favor and against Defendant;
2. That Plaintiff be awarded damages in the amount of at least $3,000,000 for the false advertising, unfair competition, and trade libel alleged herein;
3. Awarding statutory damages pursuant to Section 35(c) of the Lanham Act, 15 U.S.C. § 1117(c) or, alternatively, Homeland's actual damages and Defendant's profits for Euro-Pro's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);
4. Awarding treble damages for Euro-Pro's willful and knowing infringement of the NUTRIBULLET trade dress pursuant to 15 U.S.C. § 1117(a);
5. Euro-Pro to be ordered to issue corrective advertising to re-educate consumers who have been unfairly mislead under which Euro-Pro is required to send notice to all consumers who purchased the NUTRI NINJA PRO advising such consumers of the false advertising and giving such consumers

-13-

the right to a full refund.

6. To prevent future harm, Euro-Pro must be ordered to immediately advise retailers that no further NUTRI NINJA PRO products can be sold and recall all NUTRI NINJA PRO boxes on store shelves for Euro-Pro to re-label them by removing all false advertising and confusing trade dress.

7. Awarding Homeland's costs, attorney's fees, investigatory fees and expenses to the full extent provided by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

8. An award of punitive damages in accordance with Cal. Civ. Code § 3294 of an amount adequate to punish and deter Euro-Pro from engaging in false advertising and trade libel, especially in light of its long history or engaging in such conduct;

9. An award for private attorney general fees in accordance with Cal. Code Civ. Proc. § 1021.5.

10. Plaintiff be awarded its costs of suit and reasonable attorney fees;

11. Interest on all damages, according to proof; and

12. Any and all other relief the Court deems just.

Respectfully submitted,

TROJAN LAW OFFICES

by

May 21, 2014                    /s/R. Joseph Trojan
                                R. Joseph Trojan
                                Attorneys for Plaintiffs