O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC, a California LLC; NUTRIBULLET, LLC,L a California LLC,<br><br>      Plaintiff,<br><br>   v.<br><br>EURO-PRO OPERATING LLC, a Massachusetts LLC,<br><br>      Defendants. | Case No. CV 14-03954 DDP (MANx)<br><br>**ORDER DENYING EX PARTE APPLICATION FOR ORDER REQUIRING PLAINTIFF TO CEASE PUBLICIZING PRELIMINARY INJUNCTION AND ORDER AUTHORIZING "CORRECTIVE NOTICE"**<br><br>[Dkt. No. 35] |

   Before the Court is an ex parte application by Defendant for an order requiring Plaintiff to cease "publicizing" this Court's preliminary injunction in this case, dated August 22, 2014. Defendant also seeks to be allowed to issue a "Court-approved notice" correcting alleged erroneous characterizations of the injunction by Plaintiff.

   For the reasons discussed below, the Court denies the application in its entirety.

**I. BACKGROUND.**

   Plaintiff and Defendant are competitors in the home blender market. On May 22, 2014, Plaintiff filed a complaint with this

Court alleging, inter alia, that the packaging of Defendant's NUTRI NINJA PRO blender made a number of false representations about Plaintiff's NUTRIBULLET line of blenders.

Plaintiff moved for a preliminary injunction against Defendant to prevent, inter alia, sales of the allegedly falsely-labeled product pending the outcome of this litigation. On August 22, 2014, this Court issued a preliminary injunction with regard to three claims made on the NUTRI NINJA PRO packaging: "(1) that 'NUTRIBULLET' products do not operate at 900 watts; (2) that 'NUTRIBULLET' products do not produce 21,000 RPMs; and (3) that 'NUTRIBULLET' products do not have "sip & seal" (or drink through) lids." (Order Granting Prelim. Inj., § IV.) Defendant was ordered to remove all three statements from "all NUTRI NINJA PRO products on sale to consumers and from any other Euro-Pro advertisements." Id.

Shortly thereafter, Plaintiff sent letters to a number of retailers who carry Defendant's products. The letters notified retailers of the injunction, stated that "retailers . . . who have notice of the injunction must also comply," and declared Plaintiff's intention to "bring[] contempt proceedings against violators." (Decl. Jennifer McCabe, Exhibit A.) The letters stated that the injunction was based on a "finding" that the statements on the packaging were "literally false." The letters also noted that the litigation is ongoing, and that "[Plaintiff] will likely be entitled to monetary damages for every sale" and that "[i]f Euro Pro is unable to pay the damages, then any company in the sales chain can be held liable for the damages." Id. Finally, the letters made retailers aware of another recent case in

2

which a federal court in Pennsylvania also issued a preliminary injunction against Euro-Pro for false advertising. Id.

Defendant seeks an order from this Court barring Plaintiff from "publicizing" the injunction or the Pennsylvania case "in any manner whatsoever . . . without limitation," requiring Plaintiff to "immediately provide Euro-Pro and the Court with copies of every letter and other communication it sent to a non-party," and "[a]llowing Euro-Pro to issue a Court-approved notice," correcting what Defendant alleges are "erroneous" representations in Plaintiff's letters. (Ex Parte Appl., § VI.)

**II. LEGAL STANDARD.**

Defendant does not point the Court to a specific legal theory under which this relief should be granted. However the Court will assume for purposes of this order that the Defendant invokes the Court's broad inherent equitable power to protect its own orders from evasion, abuse and misuse. See, e.g., Porter v. Warner Holding Co., which noted that when a district court's power to enjoin is invoked,

> all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction . . . . In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances.

328 U.S. 395, 398 (1946). This Court notes that typically these powers will be invoked against the party enjoined, in a contempt hearing. But it is not outside the power of the court to bind either party in order to ensure the order is effectively carried

3

out. See Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Veterans Admin., 98 F. Supp. 2d 25, 26 (D.D.C. 2000) (holding that the court "retained jurisdiction to permit *any one of the parties to seek such further orders* or directions as may be necessary or appropriate for the construction or carrying out of this Decree") (internal quotation marks omitted) (emphasis added).

Thus, this Court will be guided by general equitable principles in deciding whether and how to fashion relief necessary to properly enforce and ensure the effectiveness of the preliminary injunction, including, as needed, orders against either party necessary to prevent the abuse of the injunction. These principles include attempting to follow "equity's lodestar that 'justice be done,'" as well as a consideration of the public interest and, where applicable, Congress's policy intent in granting the courts injunctive power in the first place. E.E.O.C. v. Recruit U.S.A., Inc., 939 F.2d 746, 753-54 (9th Cir. 1991).

**III. DISCUSSION.**

In this case, justice, the public interest, and the policy undergirding the court's statutory injunctive power do not favor issuing Defendant's proposed orders.

First, justice and the public interest might mandate issuing some sort of order if Plaintiff's letters misrepresented the content of the injunctive order, asserting unlikely or spurious claims *in terrorem* in order to chill market demand for Defendant's products. This is, indeed, more-or-less what Defendant alleges.

The letter to Amazon.com, submitted by Defendant as a representative sample, asserts that the "injunction is based upon the Judge's finding that the advertising on the box for the NUTRI

4

NINJA PRO contains false statements that are likely to deceive consumers." (McCabe Decl., Exhibit A.) The same paragraph also states that "The Court found that some of the claims on the box were literally false." Id.

This language accords, in at least a narrow sense, with the language of the injunctive order: "[I]t follows from this conclusion that three of the statements made in the [packaging] are false." (Order Granting Prelim. Inj., § III.A.1.) And: "Euro-Pro's assertion . . . that the model [manufactured by Plaintiff] lacks these features is literally false." Id. However, were that language taken in isolation, it could create the impression that the Court has made a final judgment on the merits in the case, rather than making a *limited* factual finding for the sole purpose of determining whether to grant a *preliminary* injunction pending the outcome of litigation.

Plaintiff's letters do not fall into this trap. Immediately prior to the statements about the Court's "findings," the letter states that it is from attorneys representing Plaintiff "in a false advertising case" and states, correctly, that the injunction is a "preliminary injunction." (McCabe Decl., Exhibit A.) The language is not a model of absolute clarity on this point—it might more advisably have included words like "ongoing" or "pending" in describing the "false advertising case," for example. But it conveys, if infelicitously, the procedural posture of the case. While there is still some danger that the unsophisticated will fail to understand the nuanced difference between a preliminary injunction and a final judgment on the merits, the facts presented seem to show that many of the retailers who have expressed concern

5

following the letters are represented by competent, cautious counsel. (McCabe Decl., Exhibit B (letter from Costco mentioning discussions with in-house counsel and stating that "[i]t looks like there have [sic] already been a preliminary finding made").)

Thus, Plaintiff does not actually misrepresent the language of the injunction itself.

Defendant nevertheless alleges that Plaintiff misrepresents the *scope* of the injunction by advising recipients of the letters that "retailers such as Amazon.com who have notice of the injunction must also comply with the Court's order." (McCabe Decl., Exhibit A.) Defendant argues that the retailers are not within the scope of the injunction, because they are neither parties nor nonparties who have notice of the injunction and "are in active concert or participation with" the enjoined party. Fed. R. Civ. P. 65(d)(2).

Who is in "active concert or participation with" a party is not a fully settled area of law. The Ninth Circuit has not specifically addressed the question of whether retailers who sell a party's enjoined product are in "active concert" with the party. Other courts appear split on the question. Compare Aevoe Corp. v. AE Tech Co., 727 F.3d 1375, 1384 (Fed. Cir. 2013) ("We find that the S & F Defendants fell within the purview of the original injunction because they were 'acting in concert' with AE Tech in connection with the resale of the redesigned products."), with Paramount Pictures Corp. v. Carol Pub. Grp., Inc., 25 F. Supp. 2d 372, 376 (S.D.N.Y. 1998) ("Paramount has not demonstrated that the nonparty retailers and distributors are 'acting in concert' with Carol Publishing."). It should be noted, however, that both Aevoe

and <u>Paramount</u> are heavily dependent on their facts: in <u>Aevoe</u>, the retailer had an exclusive distribution agreement with the enjoined party, making it a "privy" of the party, while in <u>Paramount</u> the retailers had completed their purchases of the enjoined products prior to the injunction.

And in general the inquiry is likely to always be fact-intensive. <u>Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.</u>, for example, noted a line of cases establishing that those who "aid or abet the named parties in a concerted attempt to subvert" the injunction fall within the injunction's power. 91 F.3d 914, 919 (7th Cir. 1996). But the court found no bright line dividing those who are "aiding and abetting" the enjoined party from those who are merely in business with the party at arm's length but in a way that incidentally subverts the intent of the injunction. Rather,

> A court must consider the extent of the alleged "active concert or participation" of third parties with those named in the injunction in determining whether the injunction's prohibitions shall apply to those third parties . . . .
> The resolution of Rockwell's allegations made in support of a finding of contempt necessitated a complete factual inquiry.

<u>Id.</u> at 920.

Because the inquiry is so fact-specific, and the law still relatively unsettled, this Court cannot say for certain that Plaintiff misrepresents the scope of the injunction. To be sure, Plaintiff puts forward a particular theory of the injunction's reach to nonparties that might not be sustained in an actual contempt hearing. But that is true of a great number of letters warning of potential legal action; often the law is not quite so

7

certain as a potential plaintiff would wish.  This does not mean that courts should enjoin or constrain such letters, where the party's legal theory is at least plausible and the potential action is not purely frivolous or harassing.

Finally, the intent of Congress in providing the courts the power to grant injunctive relief in Lanham Act cases also does not favor granting Defendant's application.  The purpose of the Lanham Act is to "protect[] persons engaged in [commerce within the control of Congress] against unfair competition" POM Wonderful LLC v. Coca-Cola Co., 134 S. Ct. 2228, 2234 (2014).  To the extent that Plaintiff's Lanham Act claim is likely meritorious, and therefore justifies the extraordinary measure of preliminary injunctive relief in the first place, it is clear that Plaintiff may aggressively assert the injunction's protection in the marketplace in order not to be subject to unfair competition.

This is not to say Defendant's contention that it has been poorly treated is entirely without merit.  In particular, Plaintiff's reference in its letters to an unrelated case in the Western District of Pennsylvania, involving a different plaintiff and different facts,[1] served no purpose in asserting its theory of nonparty liability for contempt in this case.  That portion of the letter strayed far beyond what was necessary to put retailers on notice of the injunction in this case.

---

[1] The case apparently referenced is Groupe SEB USA, Inc. v. Euro-Pro Operating LLC, No. CIV.A. 14-137, 2014 WL 2504741 (W.D. Pa. June 3, 2014).

8

The court refrains from ordering Plaintiff to cease making reference to the unrelated case in such letters out of deference to potential speech concerns. However, should Plaintiff elect not to immediately delete the reference, the court will set a hearing on whether the preliminary injunction should be vacated. Plaintiff shall, by 4:30 p.m. tomorrow, advise the Court through the filing of a notice which course it elects to take.

Apart from that issue, however, the Defendant's most powerful response to the Plaintiff's letter is likely to be the "preferred First Amendment remedy of 'more speech, not enforced silence,'" United States v. Alvarez, 617 F.3d 1198, 1216 (9th Cir. 2010) aff'd, 132 S. Ct. 2537, 183 L. Ed. 2d 574 (U.S. 2012). Defendant asks that this court "approve" a specific "notice" to retailers calling Homeland's characterization of the injunction "erroneous" and stating that "retailers are not subject to the injunction." (Ex Parte Appl., § VI.) Because, as discussed above, such a determination would be fact-intensive and more appropriately made in the course of a contempt hearing, the Court declines to approve any such statement. Defendant, however, is free to explain the lawsuit, the scope of the injunction, the injunction's timetable, and Defendant's own theory of "active concert or participation" to those retailers who express concern.

**IV. CONCLUSION.**

Because the Court does not find that it is necessary to issue any of the requested orders in order to protect or enforce its injunctive order, Defendant's ex parte application is denied. However, Plaintiff shall notify the Court by 4:30 p.m. of the day after this order is issued whether it intends to continue making

9

reference to the unrelated Pennsylvania case in future letters.

IT IS SO ORDERED.

Dated: September 10, 2014

DEAN D. PREGERSON
United States District Judge

10