O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMELAND HOUSEWARES, LLC, a California LLC; NUTRIBULLET, LLC,L a California LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>EURO-PRO OPERATING LLC, a Massachusetts LLC,<br><br>　　　　Defendant.<br>_____ | Case No. CV 14-03954 DDP (MANx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>[Dkt. No. 51.] |

   Before the court is Defendant's motion to dismiss various claims in Plaintiffs' Second-Amended Complaint. Having considered the parties' submissions and heard oral arguments, the Court adopts the following order.

**I.　BACKGROUND**

   Plaintiffs Homeland Housewares, LLC and Nutribullet, LLC (hereinafter collectively referred to as "Homeland") and Defendant Euro-Pro Operating, LLC ("Euro-Pro") both sell and advertise home blenders.  (Second Amended Complaint ("SAC") ¶¶ 5-6, Dkt. No. 47.) Plaintiffs sell and advertise several single-serving blenders under

its BULLET line of products, including the MAGIC BULLET, the NUTRIBULLET, the NUTRIBULLET SPORT, and the NUTRIBULLET PRO. (Id. at ¶ 4.) Likewise, Defendants sell blenders and kitchen appliances and are known for their NUTRI NINJA PRO blender. (Id. at ¶ 6.)

Plaintiffs seek damages and injunctive relief for false advertising under federal and state law, trade dress infringement, trade libel, and unfair competition. (Id. generally.)

Plaintiffs take issue with the product packaging for the NUTRI NINJA. (Id. at ¶ 6.) Plaintiffs allege that, in an attempt to draw consumers, Defendants "chose to duplicate the color scheme, fonts, phraseology, and overall look and feel of the Plaintiffs' NUTRIBULLET packing trade dress." (Id.) Plaintiffs' further allege Defendants made false statements on the NUTRI NINJA PRO packaging show, specifically regarding the capabilities and functions of the NUTRIBULLET. (Id. at ¶ 13-14.)

In addition, Plaintiffs allege Defendants have "launched a campaign to plant false reviews on the Internet making false claims of defects in NUTRIBULLET blenders and touting the NUTRI NINJA as a superior alternative." (Id. at ¶ 15.) Plaintiffs claim that all the reviews on a specific website contain the same pattern; the reviews list the defect in the NUTRIBULLET, compare it to the NUTRI NINJA, and agree that the NUTRI NINJA is better. (Id. at ¶¶ 17-18.)

Plaintiffs allege that Defendants have launched a campaign to plant false statements about the NUTRIBULLET in its NUTRI NINJA infomercials. (Id. at ¶ 19.) In the infomercial, Defendants show a performance comparison test of the NUTRI NINJA DUO to the NUTRIBULLET. (Id.) However, Plaintiffs allege this comparison failed to properly use the NUTRIBULLET, thereby producing what

2

Plaintiffs call "a false result." (Id. at ¶ 20.) Plaintiff claims the comparison test and the statements by the host that the NUTRIBULLET "clearly had trouble" blending the contents are false statements about the NUTRIBULLET. (Id. at ¶ 19.)

Finally, Plaintiff alleges that the false statements above also constitute trade libel and unfair competition. (Id. at ¶¶ 40-51.)

In this motion to dismiss, Defendant seeks to dismiss Plaintiffs' claims with prejudice under Fed. R. Civ. P. (12)(b)(6), arguing that Plaintiffs fail to state plausible claims.

**II. LEGAL STANDARDS**

In order to survive a motion to dismiss for failure to state a claim, a complaint need only include "a short and plaint statement of the claim showing that the pleader is entitled to relief." Bell Atl. Corp. V. Twombly, 550 U.S. 544, 55 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. V. Twombly, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." Id. at 679.

**III. DISCUSSION**

**A.   False Advertising Claims: False Internet Reviews**

Plaintiffs allege that Defendant has "launched a campaign to plant false reviews" of Plaintiffs' products on the Internet. (SAC, ¶ 15.) As an example, Plaintiffs point to a particular internet review and comment thereto containing some negative comments about the "NUTRIBULLET" product or products – for example, that contents spill from the NUTRIBULLET's blender jar, and that lubricant leaks into the blender jar. (Id. at ¶¶ 15-18.) Plaintiffs allege that the review and the comment are not neutral reviews, but rather are "just . . . false advertising by Euro-Pro under the deceptive guise of consumer reviews." (Id. at ¶ 18.)

To state a claim for false advertising under the federal Lanham Act (15 U.S.C. § 1125),[1] a defendant must allege (1) a false statement in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has a tendency to deceive consumers; (3) the deception is material to purchasers; (4) entry into interstate commerce; and (5) injury. Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir.1997). The Court previously dismissed a similar claim in Plaintiffs' First Amended Complaint ("FAC"), primarily because the claim in that complaint alleged only that Defendant made "false claims of

---

[1] Plaintiffs also bring false advertising claims under California's Unfair Competition Act. See California Business and Professions Code § 17200 ("As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."). However, such claims are "'substantially congruent' to claims made under the Lanham Act." Cleary v. News Corp., 30 F.3d 1255, 1263 (9th Cir. 1994). Therefore, the Court analyzes the state and federal false advertising claims together.

4

defects" in reviews "on the internet." (Dkt. No. 50 at 4:11-5:22.) Because such extremely generic claims were too vague to provide notice to Defendants as to Plaintiffs' theory of liability, or to state a plausible claim,[2] the Court dismissed under the Iqbal/Twombly standard.

In the Second Amended Complaint, however, Plaintiffs' allegations are much more specific. Plaintiffs point to a specific review of its product on the internet as well as a comment on that review. The review and the comment allegedly make particular factual statements about Plaintiffs' products. Plaintiffs allege that these statements are false, and that they are "false reviews" planted by Defendant. These allegations suffice to state the first prong of a Lanham Act claim. As to the other prongs, Plaintiffs allege that "Euro-Pro is able to convince consumers that its inferior product is equal to or superior to the quality of the [NUTRIBULLET]," (SAC, ¶ 24), and that Defendant's alleged deception has actually changed consumer behavior and thus injured Plaintiffs. (Id. at ¶ 26.) Assuming, as seems reasonable, that placing a review on a widely-available website is placing a statement into

---

[2] "[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

5

interstate commerce,³ these allegations suffice to state a claim for false advertising.⁴

**B.   False Advertising Claims: Product Comparison on Infomercial**

Plaintiffs also allege that Defendants engaged in false advertising when they created an infomercial comparing the NUTRIBULLET to the NUTRI NINJA. (SAC, ¶ 19.) Plaintiffs allege that Defendants's infomercial included a head-to-head comparison of the two blenders attempting to blend the same⁵ "ice, frozen fruits, and . . . fibrous, difficult to extract vegetables, nuts, and seeds." (Id.) Plaintiffs allege that one of the hosts of the infomercial declared that the NUTRIBULLET had "trouble" blending those ingredients, while the NUTRI NINJA did not. (Id.) Plaintiffs allege that the comparison is literally false because "the comparison test fails to properly use the NUTRIBULLET by filling the NUTRIBULLET container with a sufficient amount of liquid." (Id. at ¶ 20.) In other words, "the infomercial does not show that the NUTRIBULLET has 'trouble' blending *if the NUTRIBULLET were operated according to its instructions*." (Opp'n at 7:18-20 (emphasis added).)

---

³"[A]s both the means to engage in commerce and the method by which transactions occur, the Internet is an instrumentality and channel of interstate commerce." United States v. Sutcliffe, 505 F.3d 944, 953 (9th Cir. 2007) (quoting United States v. Trotter, 478 F.3d 918, 921 (8th Cir.2007)).

⁴Defendant notes that Plaintiffs have incorrectly described the allegedly false reviews as comparing the NUTRIBULLET to the NUTRI NINJA PRO, when in fact the NUTRIBULLET is compared to the "Ninja BL201 Kitchen System Pulse." (Pls.' Mem. P. &. A. ISO Mot. Dismiss at 5.) This mistake is not fatal to the claim, however, as the material question is what the review says about the NUTRIBULLET, not Defendant's own products.

⁵"Both blenders are filled with the same ingredients . . . ." (SAC, ¶ 19.)

6

Plaintiffs' allegations are notable for what they do not claim. Plaintiffs do not suggest, for example, that the producers of the infomercial ran the NUTRIBULLET on low power while running the NUTRI NINJA on high power. Nor do they suggest that some component of the NUTRIBULLET – the blade, perhaps – is missing in the demonstration. Finally, Plaintiffs do not allege that the NUTRIBULLET is actually effective in blending that particular combination of ingredients. On Plaintiffs' own allegations, the only way in which the producers of the infomercial did not operate the NUTRIBULLET "according to its instructions" is that they did not *add* an additional ingredient (some liquid) to the mix of items to be blended. But not adding liquid does not result in a literally false impression on the part of the viewer. Rather, it creates the literally true impression that the NUTRI NINJA can blend this particular set of ingredients without adding any liquid, while the NUTRIBULLET cannot.

Of course, a literally true statement can still constitute false advertising "if it can be shown that the advertisement has misled, confused, or deceived the consuming public." Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1140 (9th Cir. 1997). But it is hard to see how this demonstration would mislead, confuse, or deceive the public. The infomercial, on these allegations, does not suggest that there are *no* conditions under which the NUTRIBULLET could blend ice, fruit, etc., or that the NUTRIBULLET could *never* produce a satisfactory smoothie or juice. Rather, it shows, apparently correctly, that the NUTRIBULLET is not as effective at blending a particular set of ingredients in a

7

particular proportion. Such a demonstration does not confuse; it merely demonstrates that the products perform differently.

Because the infomercial did not create a literally false impression or mislead, confuse, or deceive the public, Plaintiffs' allegations as to the infomercial do not state a claim for false advertising.[6]

### C. Trade Dress Claim

Plaintiffs' FAC asserted a claim for trade dress infringement as to its product packaging (Dkt. No. 12); that claim was dismissed in the Court's previous order. (Dkt. No. 46.) The SAC states the same claim in considerably more detail. (SAC, ¶¶ 31-34.) Specifically, Plaintiffs assert the following elements of its trade dress: "predominantly" green packaging; block-font, all-capital lettering in white or green; the product's "trademark logo" in the top left hand corner; photo of the product against "a cornucopia of fruits and vegetables"; pictures of blender container filled with blended contents; wattage of the blender on the right side; a "band of text" on the bottom of the package; and distinctive "phraseology," including "Nutri," "Pro," "Extractor," "Watt," "Power" and "Extractor Blade." (Id.) Additionally, Plaintiffs assert that Defendant's packaging is "confusingly similar" to the "overall look and feel" of Plaintiffs' trade dress. (Id. at ¶ 30.)

Defendants argue that Plaintiffs have not sufficiently pled their trade dress claim because they have not pled the claim's

---

[6] At oral argument, Plaintiffs alleged for the first time that the NUTRIBULLET blender used in the infomercial might have been tampered with. This allegation, however, appears nowhere in the pleading.

8

"three basic elements: (1) distinctiveness, (2) nonfunctionality, and (3) likelihood of confusion." Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 (9th Cir. 1998).

**1.  Distinctiveness**

"An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). The parties focus on the question of acquired secondary meaning.

In the SAC, Plaintiffs allege that their packaging has acquired secondary meaning because they have:

> developed and maintained substantial secondary meaning in [the NUTRIBULLET packaging] through its spending of several hundred million dollars on advertising and promotion of the BULLET line of kitchen appliances and associated trade dress, including the NUTRIBULLET's trade dress. Homeland's advertising and promotion of the NUTRIBULLET's trade dress, through means such as infomercials, has made the primary significance of Homeland's trade dress as an identification of the source of the NUTRIBULLET, rather than identifying the NUTRIBULLET itself in the mind's [sic] of the public.

(SAC, ¶ 29.) Plaintiffs have sufficiently alleged specific channels (advertising and infomercials) by which their product packaging has come to be associated with Homeland as the source of the NUTRIBULLET. These allegations are probably sufficient, at the pleading stage, to state a claim based on secondary meaning.

///
///

9

**2.  Non-functionality**

Plaintiffs state in the SAC that their alleged trade dress is non-functional because its elements are "not essential to the use of the NUTRIBULLET line products" and "were chosen arbitrarily." (SAC, ¶ 35.)  Defendants argue that the trade dress is functional, because "the lion's share of the details . . . describe features and functionality of Homeland's Nutribullet Classic and are not arbitrary." (Reply at 10:14-16.)

"A product feature is functional and cannot serve as a trademark if the product feature is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant, non-reputation-related disadvantage." Qualitex Co. v. Jacobson Prods. Co., Inc., 514 U.S. 159, 165 (1995).  Here, at least some of the elements of the trade dress are commonly used by others in the industry, and Plaintiffs could not be given exclusive use of them: e.g., photographs of fruits and vegetables; photos of blended juice; and references to the wattage of the blender's motor.

However, multiple functional items may be combined into a non-functional aesthetic whole. Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 842 (9th Cir. 1987).  In the case of blender packaging, it is possible to arrange photographs of fruits and vegetables, photos of blended juice, and claims about wattage, along with other purely arbitrary elements like color, typeface, and layout, into a non-functional trade dress.  "Viewing the elements as a whole does not result in monopoly protection for necessary [i.e., functional] elements." Id. at 842 n.7.

10

**3.  Consumer Confusion**

Plaintiffs allege that Defendant's trade dress is likely to cause consumer confusion because "(a) Euro-Pro's Trade Dress is similar to Homeland's Trade Dress as described as depicted in Exhibit 2; (b) Euro-Pro's products bearing the trade dress are the exact same type of goods – blenders – which are sold by Homeland; [and] (c) the marketing channels used for the NUTRI NINJA PRO are the same as the NUTRIBULLET – online and brick-and-mortar retailers for kitchen appliances." (SAC, ¶ 37.)  Defendants argue that these allegations are conclusory and that it is "impossible" that consumers will be confused given "obvious differences" between Plaintiffs' packaging and Defendant's – especially Defendant's use of the NUTRI NINJA trademark on its packaging. (Mem. P. &. A. ISO Mot. Dismiss at 17-18.)

"Factors considered in the likelihood of confusion context include: 1) evidence of actual confusion; 2) defendant's intent in adopting the dress; 3) similarity of trade dress; 4) similarity of goods; 5) similarity of marketing channels; 5) strength of the trade dress; and 6) the type of goods and likely degree of purchaser care or sophistication." Lisa Frank, Inc. v. Impact Int'l, Inc., 799 F. Supp. 980, 993 (D. Ariz. 1992).

Not all the factors have equal weight, however. Fuddruckers, 826 F.2d at 845.  The strength and uniqueness of the trade dress and the actual similarity of the two trade dresses are the paramount factors. Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984); Golden Door, Inc. v. Odisho, 646 F.2d 347, 351 (9th Cir. 1980).

Here, the elements of the trade dress described by Plaintiffs are largely functional elements (photos of fruit, product photos, product descriptions) arranged in a unique way. Although such trade dress is protectable, it is not as "strong" as something more arbitrary and aesthetic, like the classic Coca-Cola bottle shape. The predominant non-functional element is color, which is not enough, by itself, to warrant strong protection. See First Brands Corp. v. Fred Meyer, Inc., 809 F.2d 1378, 1382 (9th Cir. 1987). Thus, the two trade dresses must be substantially similar in order for there to be a likelihood of consumer confusion.

Here, Exhibit 2 to the SAC plainly shows that the two packages are not substantially similar. Although the NUTRI NINJA does use a green background color that is quite close to the green used on the NUTRIBULLET package, that green is offset by black bands at the top and bottom. (On the back and sides of the box, the predominant colors are black and gray; the back and sides of the NUTRIBULLET box retain the green-and-white motif of the front.) Although both companies place their trademark logos in the upper left corner of the front of the box, the "MAGIC BULLET" mark is in thin lettering with a distinctive swirl standing in for the "G" in "MAGIC," while the "NUTRI NINJA" mark features larger block letters that taper from left to right. In the upper right, the NUTRI NINJA box displays its blender blades and trumpets the blender's wattage, while the NUTRIBULLET box displays a list of included parts. At the lower left, the NUTRI NINJA box shows a cyclone of fruits and ice being drawn down into a cup, with three other cups in the background, while the NUTRIBULLET box shows two cups, much larger and closer in scale, and their lids. In short, examining the two

packages as a whole, the Court finds that there is no plausible claim that the two are substantially similar, and this is determinative of the question of likelihood of consumer confusion.[7]

Plaintiffs have not adequately pled a claim for trade dress infringement.

**D.   Trade Libel Claim**

As to their trade libel claim, Plaintiffs allege that, because Defendant made false statements about their products' quality, they have been harmed, in the form of "lost sales, disruption of business relationships, loss of market share and of customer goodwill." (SAC, ¶¶ 42-43.) Defendants argue that Plaintiffs have not adequately pled special damages, a required element of the trade libel claim. (Mem. P. & A. ISO Mot. Dismiss at 19-21.)

Rule 9 requires that "[w]hen items of special damages are claimed, they shall be specifically stated." Fed. R. Civ. P. 9(g). Under California law, a cause of action for damages for trade libel requires pleading of special damages in the form of pecuniary loss. Leonardini v. Shell Oil Co., 216 Cal.App.3d 547, 572 (1990). In its previous order dismissing this claim, the Court noted that to plead special damages based on general business loss, Plaintiffs "should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, and facts showing that such loss in sales were the natural and probable result of such publication." (Dkt. No. 46 at 9 (quoting Isuzu

---

[7]Additionally, the Court notes that one whole side of the NUTRI NINJA box is devoted to comparing the NUTRI NINJA to the NUTRIBULLET, which would also tend to alleviate consumer confusion.

13

Motors Ltd. v. Consumers Union of U.S., Inc., 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998) (brackets omitted).)

In response to the Court's instruction, Plaintiffs now allege somewhat more specific facts in the SAC showing that there was an established business and that that business dropped off after the allegedly false statements:

> In stores where the NUTRI NINJA PRO started appearing in the second quarter of 2014, sales of the NUTRIBULLET declined an average of about 31%. By comparison, in stores where the NUTRI NINJA PRO was not sold, NUTRIBULLET sales increased in the second quarter of 2014 by an average of 14.5%. Hence, there was a net loss in sales of 45.5% due to Euro-Pro's false statements.
>
> The false statements by Euro-Pro proximately caused damage to Homeland in that they have deterred customers from purchasing Homeland's NUTRIBULLET goods . . . . As a direct and proximate result of these false statements, Homeland has suffered pecuniary loss in the sum of at least $1,252,503.53, using the net loss of 45.5% in the second quarter of sales for 2014 as a basis to extrapolate the sales Homeland would achieved but for Euro-Pro's false statements.

(SAC, ¶¶ 44-45.)

Defendant argues that this pleading is ambiguous, because, first, it does not provide a point of comparison (is the drop in comparison to the previous quarter? the same quarter in the previous year? some other time frame?), and second, it does not clarify what "NUTRIBULLET" product was affected, and by what amount. (Reply at 12.)

14

Defendant's argument has some merit – Plaintiff's numbers are not well-tethered to specifics.  Nonetheless, Plaintiffs have pled, however minimally, a prior market, a drop in sales, and a specific amount lost.  That will suffice, at the pleading stage, to state a claim for special damages, a necessary component of their trade libel claim.

**IV.   CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED IN PART and DENIED IN PART.  The false advertising claims as to the infomercial and the trade dress claim are DISMISSED.


IT IS SO ORDERED.



Dated: February 5, 2015
　　　　　　　　　　　　　　　　　　DEAN D. PREGERSON
　　　　　　　　　　　　　　　　　　United States District Judge

15